```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK
```

In re:                                   Chapter 13
                                         Case No. 16-22556-shl
        JUSTO REYES,                     White Plains, New York
                                Debtor.  July 21, 2021

<u>AGENDA</u>

- (DOC 107) LINDA M. TIRELLI, DEBTOR'S ATTORNEY APPLICATION FOR FINAL PROFESSIONAL COMPENSATION FOR THE PERIOD: 4/21/16 TO 5/24/21 FOR FEES: $36001.67 AND EXPENSES: $280.91

- CONFIRMATION OF THE CHAPTER 13 PLAN

- (DOC 109) THIS COURT'S ORDER DIRECTING FUTURE FILING PROCEDURES FOR THIS CHAPTER 13 CASE

- (DOC 16) SPECIALIZED LOAN SERVICING LLC'S OBJECTION TO CONFIRMATION OF THE CHAPTER 13 PLAN

- (DOC 105) THIS COURT'S ORDER DIRECTING FUTURE FILING PROCEDURES FOR THIS CHAPTER 13 CASE

- (DOC 97) TRUSTEE'S MOTION TO DISMISS THIS CHAPTER 13 CASE

A P P E A R A N C E S

| | |
|---|---|
| For the Debtor: | LINDA M. TIRELLI, ESQ. |
| | Tirelli Law Group |
| | 50 Main Street - Suite 1265 |
| | White Plains, New York 10601 |
| | (914) 732-3222; (914) 517-2696 fax |
| For the Office of the Chapter 13 Trustee: | DENNIS JOSE, ESQ. |
| | 399 Knollwood Road, Suite 102 |
| | White Plains, New York 10603-1936 |
| | (914) 328-6333 |
| For the U.S. Trustee: | ANDREW VELEZ-RIVERA, ESQ. |
| | 201 Varick Street |
| | New York, New York 10014 |
| | (212) 510-0500 |
| Transcriber: | AA EXPRESS TRANSCRIPTS |
| | 195 Willoughby Avenue, Suite 1514 |
| | Brooklyn, New York 11205 |
| | (888) 456-9716; (888) 677-6131 fax |
| | aaexpress@court-transcripts.net |

(Proceedings recorded by electronic sound recording)

1       MR. JOSE:  The next matter is 16-22556, Justo Reyes.

2       MS. TIRELLI:  Good afternoon, Your Honor, Linda
3  Tirelli, on behalf of the debtor, Mr. Reyes.  This is my fee
4  application.

5       THE COURT:  All right.  So, I did see the trustee's
6  opposition to the fee application.  And then I saw the debtor's
7  affidavit that was filed in support of the fee application, so I
8  have the original application at Docket 107, the objection at
9  108, and the affirmation in support at Docket 111.  I don't have
10 anything after that that I saw.  I don't know if the parties
11 have had any discussions about this matter or whether I should
12 just share my thoughts.

13      MS. TIRELLI:  May I be heard, Your Honor?

14      THE COURT:  Sure.  Go ahead.

15      MS. TIRELLI:  Your Honor, back on, I believe it was
16 the 20th of April, Your Honor rendered a decision on an adversary
17 proceeding that had been pending for quite some time.  I think
18 the hearing was back in September of 2020.  Your Honor
19 recognized on record that it was the day before the final 60th
20 month of the plan.  And Your Honor gave me the opportunity to
21 file a fee application on record, knowing that it was past the
22 60-month mark.  I did in fact file that fee application.

23      We did meet again on I believe it was June 2nd of 2021,
24 and at that time I believe it was Ms. Preuss who was on the
25 phone call.  We discussed and Your Honor again acknowledged that

1  you had given me additional time to file the application, which
2  I did file, so that addressed the trustee's objection in that
3  regard.  The trustee did ask for additional time to review my
4  application, and that is where we are as of now.
5          Now, since June 2, I did have an affidavit from my
6  client.  Because this is a dismissed case, the funds would all
7  be returned to my client, and he has no objection to me being
8  paid directly from the trustee out of the funds that would be
9  going back to him anyway.  So, that's the record as per my
10 notes, and my recollection of the June 2 hearing that we had.
11 And there was no further opposition after the additional time
12 requested by the trustee.
13         MR. VELEZ-RIVERA:  Judge, the trustee's initial
14 opposition essentially was filed because the original motion,
15 was not on sufficient notice.  So, we basically took the
16 position that it was made on short notice and that the five-year
17 limitation had passed, and that the application was made after
18 the expiry of the case.  So, at this point in time, Your Honor,
19 I'm open to the court's thoughts on this.  The trustee would be
20 most comfortable, since the expiry of the case, with the case
21 being dismissed with any funds being returned to the debtor.
22         Now, as to the efficacy and the reasonableness of the
23 fees, judge, there were a significant portion of the activities
24 undertaken in the adversary proceeding that the Trustee's Office
25 did not have a significant role in.  Our concern essentially is

1  whether the estate benefited from the entire process.  And
2  that's why we need the court's help.  The court saw the
3  adversary proceeding or related adversary proceedings in their
4  entirety, so I'm open to the court's thoughts.  It's a
5  significant amount of money in relation to whether there was any
6  benefit to the debtor of the estate.  Any agreements that Ms.
7  Tirelli has with the debtor outside of the bankruptcy case are
8  what they are, but fee applications would have to be granted by
9  the court, and we are comfortable returning the funds to the
10 debtor, judge.  I'm open to the court's thoughts.
11             THE COURT:  All right.
12             MS. TIRELLI:  Your Honor, if I may respond?
13             THE COURT:  Actually, I'd like to just offer my
14 thoughts at this point.  So, a couple of things.  One is, Ms.
15 Tirelli is correct, I was aware of the expiration of the case.
16 And you asked for permission to file a fee application; I said,
17 okay.  That doesn't mean that I was weighing in on the
18 appropriateness of the fee application in terms of the
19 expiration of the case.  It means that I'm giving you an
20 opportunity to make a fee application request and argue the
21 merits.  So, this is similar to a discussion we had in a
22 different case where I allowed you to convert it to chapter 11
23 from chapter 5, and I think you said, well, the court agreed
24 that that was fine, and actually that order in that particular
25 case said subject meaning the eligibility requirement.  So, it's

1  a similar thing, which is, I can't prejudge these things.  And
2  so, what you get is a turn at bat.  It doesn't mean that I've
3  weighed in on whether the request itself is appropriate, it just
4  means that you get to make a request.  And frankly, it's your
5  right to do that anyway.  So, that's just important to
6  understand because, otherwise, the alternative is that I'm going
7  to be making rulings essentially before I have an application in
8  front of me, without anybody briefing anything, or presenting
9  any issues to me, and that's not the way this system works.

10             And in fact, there is authority that raises concerns
11 about the ability to pay administrative expenses once the plan
12 expires.  **In re Cripps**, 549 B.R. 836, 853 (Bankr. W.D. Mich.
13 2016), confirmed 566 B.R. 172 (W.D. Mich. 2017)  And it says
14 that an applicant's request for administrative expense in that
15 case is untimely based on the fact that the case expired.  And
16 there's a similar decision at **Cornelison v. Wallace**, 202 B.R.
17 991, 993-94 (D. Kan. 1996).

18             So, turning to the request itself, I have serious
19 concerns about the amount here.  I know this is an older case.
20 It's a 2016 case, but it's a request for $36,000.  I appreciate
21 that the debtor has a view about what's okay to pay.  That's not
22 the only consideration for me.  I think the trustee is right in
23 focusing on the benefit to the estate.  There was an
24 unsuccessful loss mitigation.  There are a lot of costs here
25 relating to that.  There are costs relating to the class action,

1   the merits of which, and the concerns about, are laid out in
2   that decision.  It did take a while to render that decision.
3   That's sort of an occupational hazard.  And it is what it is.
4           There's also a tremendous amount of partner time here.
5   If you look at the hours, 46.2 hours versus 3.7 hours for
6   associate time, and the associate here is Ms. Lehning, who's
7   highly competent.  So, I have a lot of concerns here.  But none
8   of this precludes the money being returned to the debtor and
9   that being handled that way.  So, those are my thoughts.  So,
10  Ms. Tirelli, you wanted to add something?
11          MS. TIRELLI:  Yes, Your Honor, I do, actually.  Ms.
12  Lehning has only been an associate with my firm not even a year
13  now.  That as COVID related, I did take her on.  I want to say
14  that prior to that there were hardly any fees charged regarding
15  the adversary proceeding.  That was handled by outside counsel,
16  and that really had very little to do with me.  I had some
17  involvement in that, but a very, very little percentage.  And
18  there is no written objection for the trustee, so I don't know
19  what percentage the trustee is actually objecting to on that
20  note.
21          We did do two 363 sales.  The first one never actually
22  closed.  We had to go back and re-do it again.  We did have a
23  lengthy loss mitigation --
24          THE COURT:  No, no.  Ms. Tirelli, I have to look at
25  these fee applications myself; that's what I do.  So, I'm

1  familiar with what's in there.  I'm not going to spend the time
2  going through chapter and verse of everything.  I was aware
3  there were sale issues in here, there are very detailed fee
4  records, which I appreciate, and I understand that.  My question
5  for you, though, is, the trustee's made its suggestion about how
6  to handle this in a way that they feel comfortable.  I've
7  identified concerns that I have that are some of the same
8  concerns and some different concerns.  So, my question to you
9  is, do you want to think about how you want to handle this?  Do
10 you want me to make a ruling?  What is it that you want to do?
11         MS. TIRELLI:  Your Honor, I'd like my motion to be
12 granted.  I filed the motion after the court gave me permission
13 on record to file this motion.  Your Honor gave me the time to
14 do it, and I did it.  We spoke about this again on June 2.  I'll
15 have to order the transcript.
16         THE COURT:  So, you want me to make a ruling
17 notwithstanding the concerns I've identified?
18         MS. TIRELLI:  Your Honor, the concerns that the
19 trustee has identified are not in writing.  She did not write
20 any of that down.  Okay?  Anything that she had in her original
21 objection was addressed on record on the 2nd of June.  It was
22 addressed.  And the court continued this just to give her time
23 to --
24         THE COURT:  All right.  That's fine.  You want me to
25 make a ruling.  I will tell you that if I make a ruling --

1     MS. TIRELLI:  Your Honor, what choice do I have.  Your
2  Honor, I need to get paid.  What choice do I have?'
3     THE COURT:  The other choice you have is for the funds
4  to be returned to the debtor, and you work out whatever you're
5  going to work out with the debtor.
6     MR. JOSE:  Judge, if I may clarify that?
7     MS. TIRELLI:  If you're going to deny my motion, then
8  I certainly would have the right to appeal that, not that I want
9  to go that route necessarily.  But if you deny my motion --
10    THE COURT:  No, you misunderstand me.  I'm trying to
11 tee up options, and I just want to be clear as to what you want
12 to do.  That's all I'm trying to do as to whether you want me to
13 make a ruling.  If you want me to make a ruling, I'll make a
14 ruling.  That's fine.  Mr. Jose?
15    MR. JOSE:  Yes, judge.  I believe the court is well
16 within its discretion to address the appropriateness of fees
17 with or without a trustee's objection.  The trustee's objections
18 set forth what we have set forth so far --
19    THE COURT:  Not only is it appropriate, it's,
20 actually, my job.  That's what I'm supposed to do.  And fee
21 applications are not exactly -- well, that's what I'm required
22 to do under the law when I approve a fee application.  Anything
23 else, Mr. Jose?
24    MR. JOSE:  That's it, judge.  And one more aspect,
25 Your Honor.  I also want to add that to the extent that we are

1  returning the funds to the debtor, I also believe it may not be
2  appropriate for Ms. Tirelli to take funds from the debtor
3  without formal approval from the court regarding the fees in
4  question.  These were all matters that were pending in the
5  bankruptcy.
6         THE COURT:  Well, Mr. Jose, I don't know about that.
7         MR. JOSE:  Very good.
8         THE COURT:  If the fees are returned to the debtor,
9  and the debtor and Ms. Tirelli enter into an agreement, they
10 enter into an agreement.  The case would be dismissed.  It's not
11 something that I have real jurisdiction over.  I'm not trying to
12 encourage a back door, but at the same time, I recognize the
13 limits of where I can stick my nose into people's affairs.
14 There are times that people want to decide what they want to do
15 with their money.  That may pay debts, for example, that are
16 debts they don't have to pay in full.  There have been debtors
17 who do that.
18        MR. JOSE:  Understood, judge.
19        THE COURT:  So, I'll stay out of that, and that's one
20 of the reasons why I'm just trying to tee this up as a matter of
21 procedure and what Ms. Tirelli wants to do.  And she can do
22 whatever she wants to do.  That's fine.  I'm just trying to tee
23 it up in terms of what the options are here just in the interest
24 of trying to be fair and transparent to everybody and figure out
25 what people think is the best road for them.  And so, if I'm

1   going to make a ruling, then that's fine.  I'll do that.  If

2   there's something else you want to do, then people can consider

3   that option as well.  So, that's all I'm trying to do today.

4   And so, Ms. Tirelli, that's the only question I have that I'd

5   like to get an answer today on.  And if you want me to make a

6   ruling, I'll take the matter under advisement, and I'll make a

7   ruling.

8           MS. TIRELLI:  Your Honor, thank you.  I just have a

9   question for the court, if I may, just so I'm fully

10  understanding what the court is saying.  If Your Honor could

11  just tell me which items Your Honor specifically had issues

12  with, because I wasn't following which specific line items Your

13  Honor had questions on.

14          THE COURT:  I think what I said was that I had several

15  concerns.  The concerns I have are (1) the expiration of the

16  case, (2) the benefits to the estate, which deal both with the

17  loss mitigation, as well as the class action, (3) the partner

18  time.  You identified Ms. Lehning as only a recent associate.

19  But again, you recognize when I approve fees, I don't do so in a

20  vacuum.  There is sort of a going rate for what a chapter 13

21  case take.  Every case is different, and so it's only a rough

22  guide.  But I certainly have had another instance with a

23  different case, different counsel where it was essentially

24  billed almost like a chapter 11, $500 an hour for everything,

25  and the resulting fee I thought was just not consistent with the

1  market rate for a chapter 13.  And so, that was the basis for my
2  ruling.  Because I just thought that that's just not an
3  appropriate fee for this kind of case.  And so, that also is a
4  guiding principle my concerns here.
5          So, again, the matter is submitted.  I'm just trying
6  to be as helpful as I can; just to give my thoughts.  When I
7  make a ruling, I reserve the right.  If there's anything else I
8  see, I'll deal with it.  So, I'm just trying to be helpful to
9  give you an idea of where I'm coming from, so that you can make
10 an informed decision about what you want to do.  So, that's what
11 I'm trying to do.
12         MS. TIRELLI:  Okay.  And I appreciate that, Your
13 Honor.  Thank you very much for that clarification.  As much as
14 I know caselaw certainly is in favor of paying attorneys for the
15 work they do, I'm more than happy to (inaudible) at this point
16 because Mr. Reyes is in a bit of dire straits right now himself.
17 He would like to have his funds back as soon as possible, so I
18 think I should just allow my client to get the money.  I don't
19 think the case has been dismissed yet.  I believe right now it's
20 in a holding pattern based on this application.  I could be
21 wrong on that, but I'm quite sure that it's still open.  But, in
22 any case, if it's easier just to simply have the funds returned
23 to the debtor, then I will deal with the debtor outside of
24 bankruptcy.
25         THE COURT:  All right.  Does the trustee have any

1  objection to that?

2              MR. VELEZ-RIVERA:  To the extent that Ms. Tirelli is

3  withdrawing the motion for fees, judge, that would be fine.  And

4  the case will be dismissed in due course.  I'm doublechecking

5  the record to see if there's a dismissal motion, judge, and I

6  believe there was one filed in the past, but I will doublecheck

7  that, judge.  But in any event, the case has expired.  We can

8  submit a dismissal motion.

9              THE COURT:  Well, on that score, I did see that there

10 was a trustee's motion to dismiss.  I have  record of it from

11 March of this year discussing.  It's in my notes to get ready

12 for it.  But it sounds like there's no -- is there any party who

13 objects to a dismissal of the case at this point given where

14 things are?

15             (No response.)

16             THE COURT:  All right.  I ask just because I'm not

17 aware whether that motion is an older motion or not.

18             MR. VELEZ-RIVERA:  I doublechecked it, Your Honor.  It

19 was originally scheduled for March 7.  It is not an older

20 motion.  Paragraph 3 of the motion sets forth that the plan is

21 about to expire.  So, that is a cause of action that was set

22 forth in the motion.

23             THE COURT:  So, is there any objection to dismissal of

24 the case?  Which would lead to the trustee remitting the funds

25 back to the debtor.

1       MS. TIRELLI: No, Your Honor, no objection. And if I
2  could just ask when the funds will be remitted, so I can tell my
3  client? He's very anxiously awaiting to hear this.
4       MR. JOSE: Judge, I'm anticipating it will go out in
5  the cycle that ends this particular month, in the beginning of
6  August. I would have him expect it by the third week of August,
7  just being conservative. And that's where we are.
8       MS. TIRELLI: Okay. Fair enough. Just so I have
9  something to tell Mr. Reyes.
10      MR. JOSE: I just want to add that there are some
11 postal delays that we really have no control over, and that's
12 been consistent lately.
13      MS. TIRELLI: Understood.
14      THE COURT: All right. The case is dismissed. Thank
15 you very much.
16                           - o0o -
17                        CERTIFICATION
18      I, Rochelle V. Grant, approved transcriber, certify
19 that the foregoing is a correct transcript from the official
20 electronic sound recording of the proceedings in this matter,
21 Case 16-22556, held on 7/21/21.

                                         *Rochelle V. Grant*
23                                        July 31, 2021
24
25